NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STEVEN FRIEDMAN,

                Plaintiff,

            -against-                    **MEMORANDUM AND ORDER**

                                       04-CV-3077 (ERK)

NEW YORK CITY ADMINISTRATION FOR
CHILDREN'S SERVICES; DANIEL COHEN; SAINT
VINCENT CATHOLIC MEDICAL CENTERS;
BARNEY MASNICK; JENNIFER MASNICK;
HELENE FRIEDMAN; MARCO CARDENAS;
PATRICE MCFARLAN-WOODEN; SONIA
RICKETTS-HUBBARD and ZILMA COSTANZA,

                Defendants.
----------------------------------------------------------------X

KORMAN, CJ:

      Defendant Dr. Daniel Cohen ("Dr. Cohen") moves to dismiss all plaintiff's claims against him. In February of this year, I granted the motion to dismiss filed by another defendant, St. Vincent Catholic Medical Center ("St. Vincent"). See Friedman v. NYC Admin. For Children's Servs., No. 04-CV-3077 (E.D.N.Y. Feb. 25, 2005) ("February 25th Order").

      Plaintiff brought this action against the New York City Administration for Children's Services ("ACS"), several employees of that institution, various in-laws, and Dr. Cohen, the boyfriend of plaintiff's estranged wife's sister. Plaintiff seeks damages for the defendants' "wrongful and malicious deprivation of plaintiff's parental rights through the commencement of an utterly baseless 'neglect proceeding' which all but terminated plaintiff's visitation and contact with his three minor children for over seven months." Amended Complaint ¶ 1 ("Complaint"). Plaintiff asserts claims for the violation of 42 U.S.C. § 1983, the "wrongful termination of parental rights," abuse of process, defamation, and malicious prosecution. Because I conclude that plaintiff has

advanced sufficient allegations to state a viable claim under § 1983, I deny Dr. Cohen's motion to dismiss as to that cause of action. Because discovery will proceed accordingly on that claim, and because all of plaintiff's other claims arise out of the same facts, I find it unnecessary at this stage of the litigation to resolve Dr. Cohen's arguments as to the remaining claims.

## Background

The facts of this troubling case is set forth in detail in the February 25th Order, but I reiterate the background here. Steven Friedman ("plaintiff") is the father of three children – Jacob, Rachel and Benjamin – with his estranged wife Helene Friedman ("Helene"), one of the defendants. Among the other defendants are Barney Masnick ("Barney"), Helene Friedman's father; Jennifer Masnick ("Jennifer"), Helene's sister; and Dr. Cohen, who was dating Jennifer during the events which gave rise to this action. The remaining defendants are ACS and four ACS employees (collectively "the ACS defendants"): (1) Marco Cardenas ("Cardenas"), a caseworker; (2) Patrice McFarlan-Wooden ("McFarlan-Wooden"), a supervisor; (3) Sonia Ricketts-Hubbard ("Ricketts-Hubbard"), a manager; and (4) Zilma Costanza ("Costanza"), a supervisor. Plaintiff claims that he was injured after Dr. Cohen filed false and malicious reports of child abuse and neglect with ACS, precipitating an investigation and the temporary curtailment of plaintiff's visitation rights. Dr. Cohen is a psychiatrist licensed to practice medicine in the State of New York, specializing in child and adolescent psychiatry. Complaint ¶ 9. At the time he filed the reports of abuse and neglect, Dr. Cohen was employed as a resident physician by St. Vincent. Complaint ¶ 10.

Plaintiff asserts that after he and Helene began living apart in 2002, they became embroiled in a bitterly contested matrimonial and child custody dispute. The dispute was the subject of a matrimonial action in the Supreme Court of New York, Queens County, which was pending at the

time plaintiff filed this action. Pursuant to an order entered in the matrimonial action, formal custody of plaintiff's children was temporarily granted to Helene, but plaintiff was awarded liberal visitation rights with his children. Plaintiff took advantage of these rights by seeing his children days, nights, and weekends, and speaking with them by phone daily.

On or about July 24, 2003, Dr. Cohen contacted ACS by phone, identifying himself as a psychiatrist at St. Vincent. In an oral report ("ORT"), Dr. Cohen informed ACS that plaintiff was abusing and neglecting his children, and, as a result, ACS opened a case file on plaintiff and his children. Dr. Cohen subsequently reiterated the accusations against plaintiff in written reports to ACS dated July 31, 2003 and August 10, 2003 ("Reports"). In the Reports, Dr. Cohen stated that in his professional opinion, plaintiff's contact with his children was harming them, and that "the children seem to suffer from symptoms of an adjustment disorder with mixed anxiety and depressed mood." Complaint ¶ 21. In addition, Dr. Cohen's Reports stated the following: (1) "I have observed the children to be frightened and tearful following visits with their father;" (2) "The children . . . appeared to be traumatized after a visit with their father;" (3) Plaintiff "seems willing to use the children as pawns and expose them to all of his malevolent plans;" (4) "The children are experiencing traumatic emotion effect by crying hysterically, shaking, and being completely terrified to be with their father;" (5) "The children are at risk [and] if the situation continues, it can have a devastating long-term emotional and psychological effect;" and (6) Plaintiff's "intentions do not appear to be in the best interest of the children." Complaint ¶ 67.

Plaintiff asserts that Dr. Cohen filed the ORT and Reports with ACS even though he knew the allegations they contained were without any factual basis. Complaint ¶ 27. Plaintiff contends that the false and malicious reports were filed as part of a scheme in which Dr. Cohen sought to curry

favor with his girlfriend Jennifer (plaintiff's estranged wife's sister) by providing Helene with leverage in the matrimonial action and depriving plaintiff of his visitation rights. According to plaintiff, Dr. Cohen contacted ACS "at the urging and insistence, and with the knowledge, authorization and approval of, defendants Helene, Jennifer, and Barney," all of who sought to help Helene and undermine plaintiff in the matrimonial action. Id. Plaintiff maintains that Dr. Cohen never examined the children in his clinical capacity; rather, the only contact Dr. Cohen had with the children took place in the presence of Barney, Helene, and Jennifer, usually at Barney's home. Dr. Cohen never observed the children interacting with plaintiff, nor did he ever speak to plaintiff about his relationship with his children. Notably, Dr. Cohen never revealed to ACS that he was romantically involved with the sister of plaintiff's estranged wife, and when questioned by ACS, Helene denied that Dr. Cohen and Jennifer were dating.

After filing the Reports with ACS, Dr. Cohen referred the children to a colleague at St. Vincent, Dr. Lubit, who observed Jacob in a clinical capacity at least twice. Plaintiff avers that Dr. Lubit concluded that the allegations Dr. Cohen had made concerning plaintiff were unfounded. Nonetheless, neither Dr. Lubit nor any other employee of St. Vincent contacted ACS to correct the inaccurate information Dr. Cohen had reported.

Plaintiff alleges that after ACS received Dr. Cohen's Reports, the agency failed to investigate the accusations thoroughly and was reckless and grossly negligent in conducting its investigation. He contends that between July 2003, when Dr. Cohen first contacted ACS, and September 2003, the ACS defendants failed to investigate the allegations against plaintiff with due diligence and in a neutral and unbiased manner, in disregard of ACS's own rules and procedures. According to plaintiff, caseworker Cardenas acted recklessly and with gross negligence, as did his supervisors.

4

ACS did not contact any personnel at the children's school nor did the agency speak with the forensic psychologist appointed by the court in the matrimonial action, Dr. Robert Kassoff, who had recommended that plaintiff have unsupervised contact with his children. ACS never observed plaintiff interacting with his children. Nevertheless, in September 2003, ACS instituted a neglect and abuse proceeding against plaintiff ("the Neglect Proceeding").

In the Neglect Proceeding, acting upon a petition prepared by Cardenas and approved by McFarlan-Wooden and Ricketts-Hubbard, ACS obtained a temporary order of protection ("the Termination Order") which limited plaintiff's contact with his children by directing: "FATHER TO HAVE NO CONTACT WITH THE SUBJECT CHILDREN EXCEPT AGENCY SUPERVISED VISITATION UNTIL FURTHER ORDER OF COURT." Complaint ¶ 32. According to plaintiff, language used in the petition to initiate the Neglect Proceeding was lifted verbatim from the Reports filed by Dr. Cohen. Although plaintiff's liberal visitation rights before the Neglect Proceeding allowed him unsupervised visits on days, nights, and weekends, after the Termination Order was issued, plaintiff was limited to two hours of visitation with his children each week in the offices of ACS.

From November 2003 to January 2004, a trial was held on the accusations of abuse and neglect. At the trial caseworker Cardenas admitted that, although the petition with which he initiated the Neglect Proceeding described the children as "shaking" and being terrified in plaintiff's presence, he had never seen such behavior. Complaint ¶ 67. After the trial, in a decision and order dated April 19, 2004 ("Supreme Court Order"), the court rejected all of the accusations of abuse and neglect against plaintiff, and dismissed the abuse and neglect proceedings, restoring plaintiff's visitation rights with his children. The court concluded that ACS "failed to provide any credible proof that the

children have suffered an impairment or are at imminent risk of suffering an impairment of their emotional condition as a result of the actions or inactions of the respondent father." Complaint ¶ 5. The court specifically rejected the "finding [of abuse] by Dr. Cohen [in his Reports] not only on the basis of his obvious bias in the matter but also on the grounds that it is admittedly not based on a professional diagnosis or personal observation of his." Complaint ¶ 37.

Although the Supreme Court Order substantially restored plaintiff's parental rights in April 2004, plaintiff alleges that the approximate seven-month suspension of his parental rights violated his fundamental familial rights and caused him severe emotional damage. He also avers that the public airing of the accusations against him caused him severe shame and embarrassment and damaged his reputation within the community.

Plaintiff initiated this action by filing a timely Notice of Claim upon New York City and ACS on June 21, 2004. Plaintiff's Amended Complaint, filed on August 31, 2004 asserts the following five causes of action: (1) a claim pursuant to 42 U.S.C. ¶ 1983, alleging that defendant violated plaintiff's constitutional right to visit and interact with his children; (2) a claim that defendant violated plaintiff's "right under state law to visit and interact with his children;"(3) abuse of process; (4) defamation; and (5) malicious prosecution. Plaintiff demands compensatory damages of $10,000,000.00, punitive damages in the same amount, and attorney's fees.

Before me is Dr. Cohen's 12(b)(6) motion to dismiss. None of the other defendants have joined this motion.

## **Discussion**

In his motion, Dr. Cohen asserts that plaintiff's §1983 claim fails as a matter of law because the Second Circuit has repeatedly held that a parent's substantive due process rights are not violated

when the state exercises its authority to temporarily separate parent and child for the purpose of investigating allegations of child abuse. Dr. Cohen asserts, in the alternative, that plaintiff's section 1983 claim fails because Dr. Cohen is a private actor, and plaintiff cannot establish that Dr. Cohen acted "under color" of law. Dr. Cohen also claims that each of the state law causes of action should be dismissed, both because Dr. Cohen is protected by statutory and common law privileges, and because his claims are substantively insufficient as a matter of law.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) a deprivation of a constitutional right (2) "under color of any statute, ordinance, regulation, custom or usage, of any state or Territory." 42 U.S.C. § 1983. Dr. Cohen argues that plaintiff's § 1983 claim should be dismissed both because plaintiff has failed to plead a constitutional injury and because he cannot show that Dr. Cohen acted "under color" of law.

Turning first to the constitutional injury requirement, plaintiff alleges that Dr. Cohen "knowingly and deliberately instigated a meritless ACS investigation of plaintiff for the purpose of causing ACS (based on deliberately false information) to interfere with plaintiff's relationship with his children." Plaintiff's Memorandum at 13. The essence of plaintiff's argument appears to be that Dr. Cohen and the other defendants conspired to infringe his substantive due process right to family integrity. It is "clearly established that a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection." Cecere v. City of New York, 967 F.2d 826, 829 (2d Cir.1992); see also Wilkinson v. Russell, 182 F.3d 89, 103-04 (2d Cir. 1999) ("A parent's interest in the custody of a child is a constitutionally protected liberty interest."); Chi v. Rivera, 48 F. Supp. 2d 335, 348 (S.D.N.Y. 1999) (reiterating that there is a "liberty interest in family integrity...under the Fourteenth Amendment"). Indeed, the "right to the preservation of family

7

integrity encompasses the reciprocal rights of both parent and children. It is the interest of the parent in the 'companionship, care, custody and management of his or her children,' and of the children in not being dislocated from the 'emotional attachments that derive from the intimacy of daily association with the parent.'" Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977) (quoting Stanley v. Illinois, 405 U.S. 645, 651 (1972); Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, (1977)). Moreover, "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . ." Santosky v. Kramer, 455 U.S. 745, 753 (1982).

However, "[w]hile the Supreme Court has recognized an abstract fundamental liberty interest in 'family integrity,' the Court has never found that interest to be absolute or unqualified." Watterson v. Page, 987 F.2d 1, 8 (1st Cir. 1993). This is true, in part, because the right to family integrity "is counter-balanced by the 'compelling governmental interest in the protection of minor children, particularly in circumstances where their protection is considered necessary as against the parents themselves.'" Wilkinson, 182 F.3d at 104 (quoting Manzano v. South Dakota Dep't of Social Servs., 60 F.3d 505, 510 (8th Cir. 1995)). Thus, "the right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." Watterson, 987 F.2d at 8.

Because neither the abstract right to family integrity nor a parent's interest in the custody of his or her child is absolute, averred constitutional violations must be assessed on a case-by-case basis, examining the specific allegations in question. Specifically, in conducting such an examination, the Second Circuit has assessed whether a parent's rights are violated by balancing the circumstances surrounding the suspension of parental rights with the extent and duration of the suspension. See, e.g., Nicholson v. Scopetta, 344 F.3d 154, 172 (2d Cir. 2003) (finding no substantive due process violation

by child welfare authorities where children were removed from their homes for brief periods, where the purpose of removals was to ensure children's safety during investigations of domestic abuse). Tenenbaum v. Williams, upon which Dr. Cohen relies, is entirely consistent with this analysis. There, based on various signs of sexual abuse, child welfare workers removed the plaintiffs' daughter from school and subjected her to a medical evaluation, removing her from her parents' control for a period of several hours. 193 F.3d 581, 592 (2d Cir. 1999). The Tenenbaum Court held that there was no basis "to hold that a temporary separation of [the child] from her parents in an effort to obtain assurance that she had not been abused would have been so shocking, arbitrary and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Id. at 600. The Second Circuit rejected the plaintiff's invitation to analogize to cases which held that even brief seizures violated the Fourth Amendment, suggesting that the constitutionality of actions which separated children and parents could not be assessed without examining the surrounding circumstances and the reasons given for interferences with family integrity. See id. at 601 ("It does not follow from the principle that brief seizures of people may be unreasonable and therefore violate the Fourth Amendment that brief removals of children from their parents <u>to protect them from abuse</u> are 'without any reasonable justification in the service of a legitimate governmental objective,' under the Due Process Clause." (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

Based, in part, on Tenenbaum, Dr. Cohen suggests that, regardless of the circumstances that lead to a temporary suspension of parental rights, and regardless of the duration of that suspension, no substantive due process violation can be found unless the interference causes a "wholesale relinquishment" of the right to raise a child. Dr. Cohen's position, however, stretches the relevant

9

precedent. Indeed, the forced "wholesale relinquishment" of a parent's right to raise his children may <u>not</u> amount to a violation of that parent's constitutional rights if, in fact, that parent's abuse of his child precipitated the removal. Conversely, the separation of parent and child, even if of a significantly short duration, might constitute a constitutional violation if undertaken for entirely arbitrary or wholly malicious purposes.

The assessment whether plaintiff here has adequately pled a violation of his substantive due process rights must entail an examination of the extent of interference with parental rights alongside the alleged justification for the interference. Prior to Dr. Cohen's contacts with ACS, plaintiff spent weekends, Jewish holidays and evenings with his children on a regular basis. He enjoyed daily telephone contact with his children, and developed an extremely close relationship with Jacob, Rachel, and Benjamin. See Complaint ¶ 20. Following Dr. Cohen's malicious and false reports to ACS, plaintiff was able to visit with his children for only two hours a week, in the offices of ACS, under agency supervision. For a period of approximately seven months, therefore, plaintiff was unable to maintain a close relationship with his children, as he had done before the Neglect Proceeding was initiated based on Dr. Cohen's false accusations. This substantial interference with plaintiff's parental rights was a result not of credible and alarming signs of abuse, as in <u>Nicholson</u> or <u>Tenenbaum</u>, but was caused by the intentionally false accusations of Dr. Cohen that lacked any real basis in fact. Under such circumstances, where the unfounded allegations of an admittedly biased accuser provide the sole cause for the suspension of a parent's rights, the lack of any legitimate reason for the interference with family integrity weighs strongly in favor of finding a constitutional violation.

Nevertheless, even if plaintiff has adequately alleged a constitutional injury, his § 1983 claim cannot succeed unless he can also show that Dr. Cohen acted "under color" of state law. <u>See</u>

Briscoe v. LaHue, 460 U.S. 325, 329-30 (1983). Although private actors acting alone do not satisfy Section 1983's state action requirement, private parties may be liable under Section 1983 if they act in concert with state officials. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

Determining whether a private party's actions are sufficiently connected with those of state officials to deem the private party's actions "under color" of law is an imprecise science, and the Supreme Court has identified multiple tests for evaluating state action. Private actors may be found to act "under color" of law under at least four tests: (1) the "symbiotic relationship" test, see Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961); (2) the "public function" test, see, e.g., Terry v. Adams, 345 U.S. 461 (1953); Marsh v. Alabama, 326 U.S. 501 (1946); (3) the "close nexus" test, see Jackson v. Metro. Edison Co., 419 U.S. 345 (1974); and (4) the "joint participation" test, see Adickes, 398 U.S. at 152. Under the circumstances of this case, it is appropriate to analyze whether Dr. Cohen acted "under color" of law under the last theory, the joint participation test.

In Adickes, the Supreme Court set out the parameters of the joint participation test as follows:

> [A] private party . . . even though not an official of the State, can be liable under s 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willing participant in joint activity with the State or its agents,'"

Adickes, 398 U.S. at 152 (quoting United States v. Price, 383 U.S. at 794 (1966)). Applying this theory in Dennis v. Sparks, 449 U.S. 24 (1980), the Supreme Court held that private parties who corruptly conspired with a judge, a state actor, acted "under color" of state law. See id. at 27-28 ("[T]o act 'under color of' state law for Section 1983 purposes does not require that the defendant be an officer of the state. It is enough that he is a willing participant in joint action with the state or its

11

agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions.").

The Supreme Court also applied the joint participation test in Lugar v. Edmondson Oil Co., 457 U.S. 922, 941-42 (1982), in which the Court held that a corporate creditor acted "under color" of law when it invoked the aid of state officials to use state-created attachment procedures to deprive the plaintiff of his property. See id. at 942 ("The Court of Appeals erred in holding that in this context 'joint participation' required something more than invoking the aid of state officials to take advantage of state-created attachment procedures."). While Lugar arose in the context of prejudgment attachments of property, there is a stronger basis for extending the holding of a case where a defendant deliberately and wrongfully caused a violation of the plaintiff's constitutional rights. Specifically, in the context of a criminal prosecution under 18 U.S.C. § 1951, it has been held that a private actor may be found guilty of extortion under color of official right. The basis for this holding is "the precept that an individual with the requisite criminal intent may be held liable as a principal if he is a cause in fact in the commission of a crime, notwithstanding that the proscribed conduct is achieved through the actions of innocent intermediaries." United States v. Margiotta, 688 F.2d 108, 131 (2d Cir. 1982). The same reasoning would apply to a prosecution under the federal civil rights laws, see e.g. United States v. Lester, 363 F.2d 68, 72 (8th Cir. 1966), and there is no logical reason why it should not apply in the context of a civil action.

While the criminal cases discussed above turn on the language of 18 U.S.C. § 2(b), which provides that a defendant responsible as a principal for causing another to commit an offense for which the defendant could not have otherwise been guilty as a principal, the "doctrine [underlining § 2(b)] is an outgrowth of common law principles of criminal responsibility dating at least as far back

as Regina v. Saunders, 2 Plowd. 473 (1575); and of principles of civil responsibility established, by force of the maxim qui facit per alium facit per se, at least as early as the 14th century. (See: United v. Gooding, 25 U.S. (12 Wheat.) 460, 6 L.E.d. 693 (1827); Sayre, Criminal Responsibility for the Acts of Another, 43 Harv.L.Rev.689) (1930).)" United States v. Lester, 363 F.2d at 72.

Indeed, a defendant who causes an unlawful arrest or prosecution may be held responsible civilly if he does so by maliciously providing false information. See 59 N.Y.Jur.2d False Imprisonment, § 58 at 320; William L. Prosser, HandBook of the Law of Torts, § 11, p. 47 and note 97 (7th ed. 1971); Rosario v. Amalgamated Lines, 605 F.2d 1228, 1248 (2d Cir. 1979); see also Palmer v. Monroe County Deputy Sheriff, 2004 WL 941784, *5 (W.D.N.Y. 2004)(denying defendant's motion for summary judgment on plaintiff's malicious prosecution claim where defendant provided inaccurate and incomplete information to grand jury, leasing to plaintiff's and prosecution); Fowler v. Robinson, 1996 WL 67994 (N.D.N.Y. 1996)(collecting cases holding that defendant who causes arrest or prosecution by making accusations to police satisfies malicious prosecution requirement or initiating judicial action).

Particularly apposite here is Coakley v. Jaffe, 49 F. Supp. 2d 615 (S.D.N.Y. 1999), a case in which private actors manipulated the evidence they presented to a county assistant district attorney, leading to the arrest and prosecution of the plaintiffs. Judge Rakoff rejected the private defendants' argument that the plaintiffs had failed to plead actions taken "under color" of law, stating:

> [The private actors] also argue that the § 1983 false arrest claims against them should [be] dismissed because their actions were not taken under color of law. However, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 [claims]," even if the state actor himself is immune from liability. Here, the plaintiffs allege that [the private actors] wilfully caused defendant Driscoll, an Assistant District

13

> Attorney, to violate plaintiffs' rights by manipulating the evidence presented to the Grand Jury. Drawing every reasonable inference in favor of the plaintiffs, the Court concludes that plaintiffs have, at least for present purposes, sufficiently pled the existence of joint action that warrants treating [the private actors] as state actors for purposes of assessing plaintiffs' federal false arrest claim.

Id. at 624.

Just as the private defendants in Coakley presented manipulated evidence to the assistant district attorney, leading to a violation of the plaintiffs' constitutional rights, Dr. Cohen provided ACS with false and malicious information, leading to the curtailment of plaintiff's substantive due process rights. As plaintiff asserts:

> [Dr.] Cohen . . . induced and participated in the 'Neglect Proceeding' and the procurement of the Termination Order by the ACS Defendants and jointly engaged in and willfully collaborated in the deprivation of plaintiff's federal constitutional rights.

Complaint ¶ 45. Again, assuming the allegations of the complaint to be true, Dr. Cohen was a willing participant in the scheme which set in motion by his false oral and written reports to ACS and caused the initiation of the Neglect Proceeding that resulted in the suspension of plaintiff's parental rights over the course of more than half a year. In order to curry favor with Jennifer and Helene, Dr. Cohen invoked the aid of the ACS defendants to deny plaintiff his substantive due process rights to family integrity by using state-created procedures for the investigation of child abuse. Accordingly, I conclude that, at least on this motion to dismiss, plaintiff has sufficiently pled the joint participation of Dr. Cohen and the ACS defendants to justify treating Dr. Cohen as a state actor, and to find that his actions were taken "under color" of law.

Because I conclude that plaintiff has adequately pled a constitutional injury, and that Dr. Cohen, as a joint participant with the ACS defendants, acted "under color" of law, I deny Dr. Cohen's

14

motion to dismiss plaintiff's § 1983 claim. This leaves open the question whether plaintiff's state law claims are sufficient to survive Dr. Cohen's motion, but it is unnecessary to explore these issues at any length. Plaintiff's § 1983 claim, which arises from the same factual predicate which has given rise to his state law claims, must be tried in any event. If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted. As observed by Judge Clark in an analogous context: "[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue. Audi Vision Inc. v. RCA Mfg. Co., 136 F.2d 621, 625 (2d Cir. 1943).

## Conclusion

Dr. Cohen's motion to dismiss plaintiff's § 1983 claim is denied. I also deny the motion as to plaintiff's remaining claims without prejudice.


SO ORDERED.


Dated: Brooklyn, New York
September 27, 2005

                                                           s/Edward R. Korman
                                                           Edward R. Korman
                                                           United States District Judge