UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEVEN FRIEDMAN,                                 :
                                                 :
                       Plaintiff,                :
                                                 :         **Memorandum & Order**
           - against -                           :         No. 04-3077 (ERK) (JMA)
                                                 :
NEW YORK CITY ADMINISTRATION FOR                 :
CHILDREN'S SERVICES, et al.,                     :
                                                 :
                       Defendants.               :
-------------------------------------------------------------X

KORMAN, *J.*:

On September 25, 2008 ("Sept. 2008 Order"), I granted rehearing *sua sponte* of the order granting summary judgment in favor of defendant Marco Cardenas, a New York City Administration of Children's Services ("ACS") caseworker. I also directed the Corporation Counsel, who represents Cardenas, to file memorandum addressing the concerns that led me to grant rehearing. I assume familiarity with the underlying facts of this case, the relevant portions of which I discuss below, and the general background of which may be found in *Friedman v. N.Y. City Admin. for Children's Servs.*, No. 04-cv-3077, 2005 WL 2336219 (E.D.N.Y. Sept. 30, 2005). Briefly, the case arose out of a neglect petition filed against plaintiff Steven Friedman, which was based on information provided by Dr. Daniel Cohen, who was involved in a romantic relationship with Jennifer Masnick, the sister of Mr. Friedman's estranged wife. The central issue is whether Cardenas's failure to disclose his knowledge of this fact – which he conceded was material – to his superiors and in the neglect petition filed in the Family Court subjects him to liability for interfering in the fundamental liberty interest of natural parents in the care, custody and management of their children.

1

**Factual Background**

The relevant facts are not in dispute. Mr. Friedman informed Cardenas on July 29, 2003, approximately 2 months before the neglect petition was filed, that Dr. Cohen and Jennifer Masnick were romantically involved (the "Cohen/Masnick relationship"). (Neglect Hr'g Tr. 100-101, Nov. 21, 2003.) While Cardenas's testified at the Neglect Hearing that he first learned of the Cohen/Masnick relationship from Mr. Friedman (*id.* at 101), he was on notice of the existence of the relationship earlier. Indeed, Cardenas reviewed the files of previous cases involving the Friedman family and spoke with the caseworkers and supervisors who had handled those cases. (*See* Sept. 2008 Order at 3-4.) One of the files Cardenas reviewed – a "Child Protective Record Summary" for a complaint Mr. Friedman lodged with ACS against his ex-wife, Helene Friedman, on April 6, 2003 – included notes on a May 27, 2003 call to ACS by Dr. Cohen. Those notes indicate that "Dr. Cohen stated [to ACS] that he is involved in a relationship with . . . Mrs. Friedman's sister." (Dec. of Martin Kaufman, dated April 13, 2007 ("Kaufman Dec."), Ex. 5.)

Putting aside for the moment whether Cardenas learned of the Cohen/Masnick relationship when he reviewed the files, it is beyond dispute that, by no later than late-July 2003, he not only was aware of the relationship but understood that it was material to his investigation of Dr. Cohen's allegations of abuse against Mr. Friedman. Indeed, although he testified at his deposition that he could not recall whether Mr. Friedman had told him that Dr. Cohen was the boyfriend of Mrs. Friedman's sister, he testified at the Neglect Proceeding that "Mr. Friedman told" him "that Dan Cohen is the boyfriend" of Mrs. Friedman's sister. (Neglect Hr'g Tr. 100-01.) He also testified that when he asked Mrs. Friedman about the nature of the relationship

between Dr. Cohen and her sister, she did not deny it. Instead, she said they were very good friends. (*Id*. 101-03.)

Subsequently, at his deposition, he acknowledged that the existence of such a romantic relationship would have been "an important piece of information" relevant to his investigation, which would have "raise[d] questions and doubts" "as to why would a boyfriend be calling in a report." (Declaration of Kimberly Conway, Ex. A, Deposition of Marco Cardenas 44, 69; *see id*. 67-68.) Moreover, Cardenas's manager, defendant Sonia Ricketts-Hubbard, who made the decision to bring the Neglect Proceeding against Mr. Friedman, testified at her deposition that she was not told of the existence of the Cohen/Masnick relationship when she made the decision and that "[i]t certainly would have been [something that she would have liked to know]." (Conway Dec., Ex. D, Depostion of Sonia Ricketts-Hubbard 53-54.) Indeed, Dr. Cohen had even suggested "that the children . . . be seen by another child psychologist for a more formal evaluation and ongoing psychotherapy" because it would be inappropriate for him, as a family friend, to evaluate and counsel the children. (Kaufman Dec., Ex. 3 at C0001-02.) Specifically, Dr. Cohen offered "to refer the children to a good friend and colleague, Dr. Lubit," a psychiatrist at St. Vincent's Hospital in New York. (Kaufman Dec., Ex. 4 at C0015.) Cardenas, however, made no effort to obtain an independent diagnosis of the children: he never contacted Dr. Lubit (Cardenas Dep. 56); nor did he contact the independent forensic psychologist appointed by the New York State Supreme Court in connection with the Friedman's matrimonial proceedings – a collateral source that his manager Ricketts-Hubbard believed he should have contacted (Ricketts-Hubbard Dep. 58).

In sum, Cardenas knew that Dr. Cohen was involved romantically with Jennifer Masnick, when, on September 22, 2003, he filed the neglect petition, in which he adopted, without

attribution, the exact same language in "diagnosing" the children's condition as Dr. Cohen had in his August 10, 2003 letter. (C*ompare* Dr. Cohen's letter, Kaufman Dec., Ex. 3 at C0001 ("As a consequence of their father's action the children appear to suffer from symptoms of an adjustment disorder with mixed anxiety and depressed mood"); *with* Conway Dec., Ex. F (neglect petition), at C0053 ("As a result of the foregoing, the subject children have been suffering from symptoms of an adjustment disorder with mixed anxiety and depressed mood.").)

Based on the neglect petition prepared by Cardenas, which was approved by his supervisors, defendants Ricketts-Hubbard and Patrice McFarlan-Wooden, and filed with the Family Court, ACS procured an *ex parte* Order of Protection restricting Mr. Friedman's access to his children. Prior to the Order, Mr. Friedman "spent weekends, Jewish holidays and evenings with his children on a regular basis. He enjoyed daily telephone contact with his children, and developed an extremely close relationship with [them]." *Friedman*, 2005 WL 2336219, at *6. Pursuant to the Order, however, Mr. Friedman "was able to visit with his children for only two hours a week, in the offices of ACS, under agency supervision." *Id*.

On the return date, the Neglect Proceeding was transferred to the New York State Supreme Court, where it was consolidated with the Friedman's matrimonial action. The Order of Protection was extended at the same time. On April 19, 2004, the Supreme Court ordered the petition against Mr. Friedman be dismissed. Significantly, the Supreme Court held that

> [t]he only testimony offered of the children's alleged suffering is the statement contained in the petition [prepared by Cardenas] that is a direct quote from Dr. Cohen. . . . *The court rejects such a "finding" by Dr. Cohen not only on the basis of his obvious bias in this matter, but also on the grounds that it is admittedly not based on a professional diagnosis or personal observation by him.*

(Kaufman Dec., Ex. 6, Determination Upon Fact Finding Hearing, dated Apr. 19, 2004, at 7 (emphasis added).)

4

Shortly, thereafter, on July 21, 2004, Mr. Friedman brought the present action.

## Discussion

Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). "[S]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating rights elsewhere conferred." *Albright v. Olivier*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). Cardenas argues that "plaintiff has failed to point to any facts to establish the deprivation of an actual constitutional right" and even assuming there was such a deprivation, defendant Cardenas is immune from liability under the doctrine of qualified immunity. Defs.' Mem. at 16. Until recently it was the rule that "[a] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all" before examining whether the defendant is immune from liability. *Wilkinson,* 182 F.3d at 102-03. While the Supreme Court has made clear that this sequence "should no longer be regarded as mandatory," *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 818 (2009), it seems appropriate to follow the sequence here. Thus, I first address the substance of Mr. Friedman's due process claim before examining Cardenas's immunity defense.

**A.    Due Process**

"It has long been settled in this Circuit 'that a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection.'" *Wilkinson,* 182 F.3d at 103 (quoting *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir. 1992)). "'[T]he fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents.'" *Friedman*, 2005 WL

2436219, at *4 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  Nevertheless, "the right to family integrity does not include a constitutional right to be free from child abuse investigations." *Id*. at *5 (quoting *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993)).  On the contrary, the state may infringe on this right where the "protection [of the children] is considered necessary as against the parents." *Wilkinson,* 182 F.3d at 104.

"This competing interest, though compelling, is not so compelling as to derogate a parent's constitutional rights completely.  *Case workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence.*" *Id*. at 104 (emphasis added).   They must "have a '*reasonable basis*' for their findings of abuse." *Id*. (emphasis added) (quoting *Van Emrik v. Chemung County Dep't of Social Servs*., 911 F.2d 863, 866 (2d Cir. 1990)).  Here, there is sufficient evidence for a jury to conclude that Cardenas did not have a "reasonable basis for his findings of abuse" because he relied so heavily on the diagnosis of Dr. Cohen, whose romantic relationship with the aunt of the Friedman children, Cardenas admitted, would raise questions and doubts.  Indeed, in *Wilkinson*, the Second Circuit recognized that "there may well be circumstances in which a therapist is so obviously conflicted that it would give rise to possible liability for a case worker to defer to that therapist's judgment." *Id*. at 105 n.9 (finding no liability, in part, because "there is nothing in the record to suggest that defendants [case workers] had any basis for suspecting the existence of such a conflicted relationship if indeed there was one.").  Here, on the other hand, there is sufficient evidence from which a reasonable juror could conclude that, as the New York State Supreme Court's held, Dr. Cohen was "obvious[ly] bias[ed] in this matter." (Kaufman Dec., Ex. 6 at 7.)

A recent Eighth Circuit case, *White v. McKinley*, 519 F.3d 806 (2008), is instructive. The issue in *White* was whether a police officer's failure "to disclose his intimate relationship with the ex-wife of the accused[,] who was also the mother of the alleged victim[,]" violated plaintiff's constitutional rights. *Id*. at 813. Defendant police officer, Richard, was involved in a sexual relationship with White's ex-wife while he was responsible for investigating the ex-wife's allegations that White had abused their daughter. After his police chief urged him to disclose this fact to the prosecutor, Richard informed the prosecutor that he and the ex-wife had met for a single date, but failed to disclose that their relationship was sexual or that he had contact with her prior to interviewing White about the alleged abuse. The prosecutor, believing there had only been one date, chose not to disclose the relationship to the defense. *Id*. at 811. As a result, White never learned of the relationship before his first criminal trial, *id*. at 811-12, and the Eighth Circuit found that "a reasonable juror could find Richard deprived White of a fair trial in bad faith by deliberately steering the investigation to benefit his love interest." *Id*. at 814.

While *White* concerned the "suppression by the prosecution of evidence favorable to an accused" in a criminal proceeding, *see Brady v. Maryland*, 373 U.S. 83 (1963), the facts there are analogous to those here. Just as a reasonable juror could find that the police officer in *White* had deliberately withheld information material to the reliability of his investigation and the credibility of his deposition testimony in White's child abuse prosecution, there is sufficient evidence for a reasonable juror to conclude here that Cardenas deliberately failed to disclose the Cohen/Masnick relationship, the existence of which both he and his supervisors testified would be material to a decision to file a neglect petition against Mr. Friedman. The same is true of Cardenas's failure to disclose this material information to his supervisors, because had they known of the relationship, they may have decided not to bring the petition without further

7

investigation of the Friedman children. So too is his failure to obtain an independent psychiatric diagnosis for the Friedman children or to interview certain collateral sources, including professionals at the children's school, as was ACS's practice. *See Fowler v. Robinson*, No. 94-CV-836, 1996 WL 67994, at *3, 7 (N.D.N.Y. Feb. 15, 1996) (genuine issue of material fact as to reasonableness of abuse allegations where caseworkers failed to interview father charged with abuse or son's physician, whom father had suggested defendants contact.). More significantly, a reasonable juror could also conclude that had Cardenas disclosed in the neglect petition that the source of his description of the mental health of the Friedman children was provided by a "very good friend" of the children's mother, who was also the boyfriend of her sister, the Order of Protection would never have issued.

Notwithstanding Cardenas's testimony that Mr. Friedman told him of the Cohen/Masnick relationship months before he filed the neglect petition, the Assistant Corporation Counsel for City defendants argued at the February 17, 2009 hearing on the instant motion that Cardenas "did not believe" Mr. Friedman. (*See, e.g.,* Feb. 17, 2009 Hr'g Tr. 19.) This argument is unavailing if only because the City has not offered any evidentiary support for it. Indeed, after I inquired at the hearing "[w]here is there an affidavit that says that [Cardenas] didn't believe" Mr. Friedman's statement that Dr. Cohen and Jennifer Masnick were romantically involved *(id*.), the Assistant Corporation Counsel asked permission to submit an "affidavit of defendant Cardenas" (*Id*. at 29). No affidavit has been submitted after more than four months.

In sum, there is evidence sufficient from which a reasonable juror could conclude that Cardenas did not have a "reasonable basis for his findings of abuse" and that he deliberately failed to disclose facts that he knew were material to those findings (1) to his superiors, which led to the decision to bring the neglect action in the first instance; and (2) in the neglect petition

he filed in the Family Court, which led to the issuance of the *ex parte* Order of Protection and the deprivation of Mr. Friedman's parental rights.

**B.     Qualified Immunity**

Notwithstanding Mr. Friedman's presentation of evidence from which a reasonable juror could conclude that Cardenas violated his constitutional rights, defendants argue that Cardenas is entitled to qualified immunity. "[A] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Wilkinson*, 182 F.3d at 103 (internal quotation marks omitted). Nevertheless, "if any reasonable trier of fact could find that the defendant['s] actions were objectively unreasonable, then the defendant[] [is] not entitled to summary judgment. An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995).

Once again the Eighth Circuit's decision in *White v. McKinley* is instructive. There the court held that the police officer "deprived White of a fair trial . . . by deliberately with[o]d[ing] from prosecutors the full extent of his relationship with [White's ex-wife]." *White*, 519 F.3d at 814. *White* affirmed the district court's denial of qualified immunity, holding that "no reasonable police officer in Richard's shoes could have believed that he could deliberately misrepresent the nature and length of his relationship with [White's ex-wife]." *Id.* at 814. So too here. No reasonable caseworker could believe that he or she could base a neglect petition on the diagnosis of a child psychiatrist involved in a romantic relationship with the subject children's aunt without investigating the potential for bias or seeking a second opinion as to the children's mental and emotional health. It should have been clear to Cardenas that Dr. Cohen might be

9

conflicted and thus untrustworthy, particularly in light of the ongoing and bitter matrimonial action between Mr. and Mrs. Friedman. Nevertheless, notwithstanding his acknowledgment of the materiality of the Cohen/Masnick relationship, he failed to obtain an independent diagnosis of the children even though Dr. Cohen himself suggested that he do so; he failed to disclose the relationship to his superiors, who ultimately made the decision to bring the neglect proceeding against Mr. Friedman; and he failed to disclose in the neglect petition itself that his conclusions as to the Friedman children's emotional health were based, almost entirely, on Dr. Cohen's diagnosis.

In sum, a reasonable trier of fact could find that once Cardenas became aware that Dr. Cohen was involved in an intimate relationship that raised "doubts and concerns" about his truthfulness and motives it was objectively unreasonable for him to fail to (1) disclose this fact to his superiors; (2) investigate the nature of the Cohen/Masnick relationship and the effect it may have had on the impartiality of Dr. Cohen's diagnosis; and (3) seek and obtain an independent psychiatric evaluation of the Friedman children.

*    *    *

Because Mr. Friedman's § 1983 claim against Cardenas must be tried, it is not necessary to address Corporation Counsel's challenge to Mr. Friedman's various state law claims. Mr. Friedman's state law claims arise out of the same nucleus of fact as the § 1983 claim. "If one [or more] of a number of integrally related causes of action have to be tried, it makes no sense to grant summary judgment as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that summary judgment was improperly granted." *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 793 (E.D.N.Y. 1999). Indeed, as the Second Circuit has observed:

> [T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue.

*Audi Vision Inc. v. RCA Mfg. Co*., 136 F.2d 621, 625 (2d Cir. 1943).

Mr. Friedman also requested reconsideration of the order granting the City's motion for summary judgment on the *Monell* claim. (*See* Pl.'s Mem. at 13 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).) I decline to do so for the reasons stated on the record at the December 6, 2007 hearing. (*See* Dec. 6, 2007 Hr'g Tr. at 45-47.)

## Conclusion

Upon reconsideration, defendants City of New York and Cardenas's motion for summary judgment is denied.

                                        **SO ORDERED:**

Brooklyn, New York
July 21, 2009                                   *Edward R. Korman*
                                                Edward R. Korman
                                                Senior United States District Judge